IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Criminal Action No.   06-216 |
| v. | ) |
| | ) Civil Action No. 12-787 |
| | ) |
| CLAUDELLE McMAHILL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 US.C. § 2255 (ECF No. 610)[1] filed by petitioner Claudelle McMahill ("McMahill" or "petitioner"). Upon reviewing petitioner's motion and the government's response (ECF No. 611), the court will deny petitioner's motion for the reasons set forth herein.

**I. Background**

On June 20, 2006, a federal grand jury returned a second superseding indictment charging petitioner with 1) six counts of mail fraud, in violation of 18 U.S.C. § 1341 and 2 (counts twenty-three through twenty-eight); 2) three separate counts of mail fraud, in violation of 18 U.S.C. § 1341 and 2 (counts twenty-nine through thirty-one); and 3) one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1341 (count thirty-two). (ECF No. 231). Petitioner was tried by jury between October 8, 2008 and October 28, 2008. The jury returned a verdict of guilty with respect to all counts on October 29, 2008. (ECF No. 249.) Following several post-trial motions, petitioner on May 7, 2010, was sentenced to a term of imprisonment

---
[1] ECF Number references are to filings at Criminal Number 06-216.

of twenty months at each of counts twenty-three to thirty-two, to be concurrently served, followed by a term of supervised release of three years at each of counts twenty-three to thirty-two, to be concurrently served. (ECF No. 404.) Petitioner was ordered to pay $34,896.00 in restitution and a special assessment of $1,000.00. (Id.) On June 16, 2010, petitioner filed a notice of appeal of her conviction and sentence. (ECF No. 424). On December 29, 2011, the United States Court of Appeals for the Third Circuit affirmed the judgment entered by this court. (ECF No. 604).

On or about June 12, 2012, the clerk of court received and filed petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255. In her motion, petitioner claims ineffective assistance of counsel at sentencing. Specifically, petitioner asserts that her trial attorney, Mark Sindler, was ineffective by failing to disclose to the court that petitioner was pregnant at the time of sentencing. (ECF No. 610 at 3.)

On June 15, 2012, this court issued a notice that the motion to vacate had been filed and directed the government to file its response and a brief in opposition on or before July 30, 2012. On July 30, 2012, the government filed its response in opposition. (ECF No. 611). In the response, the government argues that petitioner's motion should be dismissed because: (1) she informed her counsel that she did not want to raise the issue of her pregnancy at her sentencing and counsel followed her instructions; (2) she had the opportunity to raise the pregnancy at the time of sentencing and did not do so; and (3) there was no prejudice because courts look suspiciously at post-indictment pregnancies and do not usually grant sentencing "breaks" for such pregnancies. (ECF No. 611 at 1.)

**II. Standard of Review**

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The Supreme Court reads § 2255 as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 625 (4th ed. 2011) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)). The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. Petitioner in the present case asserts that her counsel was ineffective, which implicates the first ground for relief under § 2255.

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255, unless the motion and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing hereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).

**III. Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel in violation of the Sixth Amendment petitioner must prove:  (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

The United States Court of Appeals for the Third Circuit has recognized that courts may address the prejudice prong of the Strickland analysis first.  See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir.), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant. . . .")(internal quotations and citations omitted).  The court of appeals in McAleese noted that the Supreme Court in Strickland recognized:

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

1 F.3d at 171 (quoting Strickland, 466 U.S. at 697).  The court will examine the prejudice prong of the Strickland analysis before considering the deficient representation prong.

**A.  Prejudice**

Concerning the prejudice prong, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  Williams, 529 U.S. at 390-91.  In the case of ineffective assistance at sentencing, prejudice is established if the movant demonstrates that her sentence was increased by the deficient performance of her attorney.  Glover v. United States, 531 U.S. 198, 200, 203-04 (2001).  That is, a movant arguing ineffective assistance at sentencing must

show that counsel's deficiencies at sentencing created a reasonable probability that, but for the deficient performance, her sentence would have been less harsh.  See id. at 200.

Petitioner must go beyond proving that counsel's unprofessional errors had "some conceivable effect on the outcome of the proceeding."  Strickland, 466 U.S. at 693.  Petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 694.  Based upon the record presently before the court, petitioner was not prejudiced in the present case.

Petitioner maintains that she was prejudiced at her sentencing hearing on the ground that her counsel did not inform the court about her pregnancy. Petitioner implicitly argues that the court would have granted either a downward departure or variance by reason of her pregnancy.

### 1. Departure

Federal courts have been reluctant to recognize downward departures for female defendants who become pregnant after their arrest or conviction. See United States v. Dyce, 91 F.3d 1462, 1467 (D.C. Cir. 1996) (remarking that "[c]ourts are extremely reluctant to take pregnancy into consideration" when the child was conceived after the defendant's arrest). Other courts acknowledge "pregnancy of convicted female felons is neither atypical nor unusual. It is something that the Bureau of Prisons has had experience in handling." United States v. Pozzy, 902 F.2d 133, 138-39 (1st Cir. 1990) (reversing a downward departure pursuant to U.S.S.G. § 5H1.4, with respect to physical condition, based in part on the fact that defendant was pregnant). The court of appeals in Pozzy cautioned against the effect of granting a departure and consequently "'sending an obvious message to all female defendants that pregnancy is 'a way out'"" Id. at 139 (quoting the presentence investigation report).

The reluctance of courts to rely upon pregnancy at sentencing is reflected in their interpretation of sentencing departures that could be construed in such a way as to account for a defendant's pregnancy. In the context of sentencing departures for extraordinary family circumstances pursuant to United States Sentencing Guidelines § 5H1.6, the Sentencing Commission notes: "'[f]amily ties and responsibilities . . . are not ordinarily relevant to determining whether a departure may be warranted.'" Dyce, 91 F.3d at 1472 (quoting U.S.S.G. § 5H1.6). As noted above, pregnancy is "neither atypical nor unusual," and consequently is unlikely to be considered extraordinary enough to warrant a departure. Pozzy, 902 F.2d at 138-39. Likewise, United States Sentencing Guidelines § 5H1.4, which relates to the defendant's physical condition, requires that any such condition be "unusual" or "extraordinary," or be distinguishable from the "typical cases covered by the guidelines." U.S.S.G. § 5H1.4. Pregnancy of a female defendant is neither unusual nor extraordinary and is something that the Bureau of Prisons "has had experience in handling." Pozzy, 902 F.2d at 138-39.

Petitioner cites no court decision to support the proposition that she suffered prejudice because the court was not informed about her pregnancy at the time of sentencing. Based upon the facts that were available at the time of petitioner's sentencing, her condition was not unusual or extraordinary, particularly since petitioner's filings indicate that she did not know her pregnancy was high risk until after the sentencing.[2] At the time of sentencing there was nothing about petitioner's pregnancy that would have caused the court to view her pregnancy as being outside the scope of normal pregnancies that are historically disfavored by courts as a basis for a downward departure. Based upon the record before the court, petitioner was convicted of the instant offenses in October 2008 and was pregnant at the time of her sentencing on May 7, 2010.

---

[2] In petitioner's Motion to Postpone Execution of Sentence for Two Months, (ECF No. 448), filed subsequent to sentencing, defendant notes that "[s]ince her sentencing, [petitioner] has learned that she is pregnant with twins. Her pregnancy has been designated a 'high risk' pregnancy. (Id. ¶ 3.)

(ECF No. 617 at 17.) Given that timeframe, petitioner became pregnant following her conviction. Courts are reluctant to recognize a departure for such circumstances because it would send a message to female defendants that pregnancy is a "'way out.'" Pozzy, 902 F.2d at 139.

Absent some factor that would take petitioner's pregnancy outside the norm and satisfy the "extraordinary" requirement of U.S.S.G. § 5H1.4, there is no reasonable probability that a downward departure would have been granted. Williams, 529 U.S. at 390-91.

**2.   Variance**

To the extent that petitioner's claim of prejudice stems from her desire for a sentencing variance pursuant to the factors set forth in 18 U.S.C. § 3553(a), that argument is equally unavailing. There are only two § 3553(a) factors that could potentially be the basis for a variance because of pregnancy. First, petitioner's pregnancy could have been considered pursuant to § 3553(a)(1), which requires the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The court gave significant weight to this factor at the time of petitioner's sentencing and declined to grant a variance on grounds that petitioner committed perjury during her trial and in other cases, and encouraged her son to perjure himself in an effort to protect petitioner's fiancée. (ECF No. 429 at 71-74.) The court weighed those facts against many of petitioner's redeeming qualities, including her education, intelligence, talents, and significant work history. (Id. at 72-73.) Despite these qualities, the court concluded that petitioner's misconduct was sufficiently egregious that a sentencing variance was not appropriate. As the government notes in its brief, "[u]nlike many defendants with children, petitioner is not most sympathetic when cast as a loving mother." (ECF No. 611 at 4.) Given petitioner's willingness to encourage her son to perjure himself, the fact that she was pregnant at the time of sentencing, and there being no knowledge of the high risk nature

of the pregnancy, would not have swayed the court's consideration in favor of granting a variance.

The second potential § 3553(a) factor that could form the basis for a variance is "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). As described above, the Bureau of Prisons has experience with handling pregnant female defendants. Absent knowledge about the high risk nature of her pregnancy, petitioner would have been able to receive the necessary care even while incarcerated. Pozzy, 902 F.2d at 138-39. This consideration, therefore, would not have weighed in favor of a lesser sentence. In light of the facts set forth above, knowledge of petitioner's pregnancy alone would not have created a reasonable likelihood that any of the § 3553(a) factors would weigh in favor of granting a variance. Under those circumstances, the failure to disclose petitioner's pregnancy to the court at the time of sentencing did not prejudice her. As discussed below, defense counsel's actions in making that decision were also reasonable in light of both the facts and the applicable law.

### B.     Deficient Representation

When evaluating whether counsel's performance was deficient, the relevant inquiry is whether counsel's assistance was reasonable under the totality of the circumstances. Strickland, 466 U.S. at 688. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decision, strategic choices must be respected . . . if they are based on professional judgment." Id. at 681. "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different . . . strategy would have fared better." Roland v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006).

Defense counsel's overall strategy prior to and during petitioner's sentencing hearing was reasonable. In the context of criminal defense, "certain litigation decisions are considered 'fundamental' and are for the client to make. These include decisions on whether to plead guilty, whether to testify, and whether to take an appeal. After consultation with the client, <u>all other decisions</u> fall within the professional responsibility of counsel." <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996) (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983)) (emphasis added). When defense counsel acts according to the client's instructions, "'courts have declined to characterize counsel's performance as ineffective.'" <u>United States v. Pungitore</u>, 15 F. Supp. 2d 705, 729 (E.D. Pa. 1998) (citing <u>Payne v. United States</u>, 78 F.3d 343, 346 (8th Cir. 1996)).

The record in the present case reveals that defense counsel and petitioner consulted with each other and made the decision not to reveal petitioner's pregnancy at the sentencing hearing. During a post-conviction hearing before the court, petitioner testified:

Q. At the time you were sentenced, did you know you were pregnant?

A. Yes, I did.

Q. Why didn't you tell the Court at that time?

A. Because I didn't—I spoke to my attorney at the time, and we didn't want her to think that I was trying to tell her that I was pregnant for her to think I was trying to avoid anything that she might give to me.

Q. "Her" being Judge Conti?

A. Yes.

(ECF No. 617 at 17.)

As discussed above, counsel's decision not to inform the court about petitioner's pregnancy was reasonable based upon the caselaw which reflected an unfavorable view of downward departures for female defendants who become pregnant after entering the criminal

9

justice system. See Dyce, 91 F.3d at 1467. Petitioner's own testimony indicates that her counsel and she agreed not to inform the court about her pregnancy at the time of sentencing. That decision was reasonable in light of their concern that it could have a negative impact on her sentence. Petitioner had a further opportunity to inform the court about her pregnancy when she addressed the court at the sentencing hearing—which she did not do. (ECF No. 429 at 61-64.) Because a post-conviction pregnancy is generally not a ground for departure and the Bureau of Prisons has experience with respect to pregnant inmates, and because petitioner did not wish to reveal her pregnancy at the time of sentencing, counsel's performance at sentencing was reasonable and petitioner's motion must be denied. As noted it was only after the sentencing that the high risk nature of petitioner's pregnancy was learned.

## IV. Need for Evidentiary Hearing

For reasons set forth herein, and based upon petitioner's motion and files and records of the case, the court determines that petitioner's motion shall be denied without a hearing because the motion and files and records of the case show conclusively that petitioner is not entitled to relief.

## V. Certificate of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination about whether a certificate should issue.  See 3d Cir. L.A.R. 22.2.  Based upon the motion and files and records of the case, and for the reasons set forth herein, the court finds that petitioner did not show a substantial denial of a constitutional right.  Therefore a COA should not issue.

**ORDER**

AND NOW, this 21st day of May, 2013, upon consideration of petitioner's motion, (ECF No. 610), the government's response, (ECF No. 611), the transcripts of proceedings before the court, IT IS HEREBY ORDERED that petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 is DENIED. IT IS FURTHER ORDERED that no certificate of appealability shall issue.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated:   May 21, 2013

cc:   Claudelle McMahill
     CCM Cincinnati
     36 E. 7th St., Suite 2107-A
     Cincinnati, OH 45202